PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2853
_____

CHRISTOPHER FURNARI,

Appellant

v.

UNITED STATES PAROLE COMMISSION;
WARDEN FCI ALLENWOOD
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 06-cv-00342)
Honorable Malcolm Muir, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
June 10, 2008
_____

BEFORE:  AMBRO, CHAGARES, and
GREENBERG, Circuit Judges

(Filed: July 9, 2008)

_____

Flora Edwards
115 Broadway
New York, NY 10006-0000

    Attorney for Appellants

Martin C. Carlson
Acting United States Attorney
Kate L. Mershimer
Assistant United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108-0000

    Attorneys for Appellee

_____

OPINION OF THE COURT

_____

GREENBERG, Circuit Judge.


I.  INTRODUCTION


       On February 15, 2006, appellant Christopher Furnari
filed a habeas corpus petition pursuant to 28 U.S.C. § 2241 in
the District Court claiming that the United States Parole

Commission ("Parole Commission") improperly had denied him parole. Furnari is serving a pre-Sentencing Guidelines 100-year sentence (five consecutive 20-year sentences) for RICO and Hobbs Act convictions related to extortion and racketeering. Since the start of his incarceration the Parole Commission has granted Furnari five parole hearings but has not ordered him paroled either at the time of its decision or on some future date. Furnari claims that the Parole Commission has based its denial of parole on an improper calculation of his offense severity rating and has failed to consider mitigating factors in his favor. On June 20, 2007, the District Court denied Furnari's petition and, on the next day, Furnari filed a timely notice of appeal to this Court.

## II. FACTS AND PROCEDURAL HISTORY

Obviously this case has a long history but we only need recount that history from 1986, when a jury convicted Furnari of racketeering, extortion, and racketeering conspiracy under RICO and the Hobbs Act in the United States District Court for the Southern District of New York. Furnari was consigliere, a high ranking position, of the Lucchese[1] crime family. Furthermore, the Government suspected that he was a member of "the commission," the national ruling body of the mafia, also known as La Cosa Nostra, of which the Lucchese crime family was a part. See United States v. Salerno, 868 F.2d 524, 543 (2d Cir. 1989). Furnari's conviction stemmed from an extortion and labor bribery operation that the commission, which controlled

---

[1]Throughout the record the family name is spelled both as Luchese and Lucchese.

large concrete construction contracts in New York City, ran as one of its nefarious activities. In the concrete scheme the commission demanded and received 2% of the price of concrete contracts worth more than two million dollars and, in exchange, ensured "labor peace." The commission forced the concrete companies to make payments or risk retaliation by labor unrest or physical harm. Id. at 529.

Furnari currently is serving his 100-year sentence at the Federal Correctional Institution in Allenwood in the Middle District of Pennsylvania. On direct appeal from his convictions and sentences Furnari argued that his 100-year sentence was disproportionate to the gravity of his crimes because he was not a mafia boss or underboss. The United States Court of Appeals for the Second Circuit upheld the sentence because Furnari's role as consigliere made him the equivalent of an underboss and Furnari's sentence was consistent with the sentences of six of his seven co-defendants and thus was consistent with sentences imposed on similarly situated prisoners. Id. at 543. Since his conviction Furnari has filed four petitions for habeas corpus, the denial of the fourth of which he challenges on this appeal. Furnari's current status is that the Parole Commission has denied him parole pending a 2011 rehearing.

(a) 1996-2000: The First Parole Hearing, the First Habeas Corpus Petition and First Interim Parole Hearing

Furnari's first parole hearing was in December 1996. At the hearing the Government produced evidence of Furnari's involvement in a number of murders and other violent acts. The Parole Commission assigned Furnari an offense severity rating of Category Eight, the most severe rating. See 28 C.F.R. § 2.20. Category Eight offenders are not granted parole in the absence

of compelling mitigating circumstances.

The Parole Commission recommended that Furnari continue to serve his sentence until a 15-year reconsideration hearing in December 2011. In its Notice of Action the Parole Commission specified that Furnari's involvement in the Lucchese crime family and his participation in murders and violence were the pertinent factors warranting consideration for release after more than 148 months served. See 28 C.F.R. § 2.20 ("For decisions exceeding the lower limit of the applicable guideline category by more than 48 months, the [Parole] Commission will specify the pertinent case factors upon which it relied in reaching its decision."). Furnari's applicable parole guideline category as set forth in 28 C.F.R. § 2.20 was 100+ months predicated on his offender characteristics. Of course, service of 148 months imprisonment merely made Furnari eligible for parole rather than ensuring that he would be paroled. On August 19, 1997, the National Appeals Board ("Board"), the administrative appeals authority in the parole system, affirmed the decision of the Parole Commission. In reaching its result the Board relied in part on information that Anthony Casso, a violent mafia member, had supplied. In justifying this reliance the Board pointed out that there was corroboration for some of Casso's information.

In February 1998 Furnari petitioned for a writ of habeas corpus in the District Court contending that his Category Eight rating was erroneous. The court denied Furnari's petition on April 12, 1999, finding that there was a rational basis for the Parole Commission's decision assigning him that category. Furnari then appealed to this Court.

While that appeal was pending, the Parole Commission

granted Furnari a statutory Interim Parole Hearing in December 1998 pursuant to 18 U.S.C. § 4208(h) and 28 C.F.R. § 2.14. During the hearing Furnari argued that Casso's information was unreliable and he presented an affidavit from an assistant United States attorney supporting his contention. Nevertheless the Parole Commission did not change the prior order requiring Furnari to serve his sentence until a 15-year reconsideration hearing in December 2011. The Board affirmed the order of the Parole Commission on April 2, 1999, and issued a Notice of Action on Appeal.

In our disposition of Furnari's appeal from the denial of his first habeas corpus petition we took judicial notice of Furnari's December 1998 interim hearing and the April 2, 1999 Notice of Action on Appeal. Furnari v. Warden, Allenwood F.C.I., 218 F.3d 250, 255-56 (3d Cir. 2000). We found that the Parole Commission and the Board erred because they did not explain whether they had continued to deny Furnari parole based on Casso's information and, if so, why they did so. Id. at 257. Consequently, we vacated the District Court's order denying the habeas corpus petition and remanded the case with the direction that the District Court enter a conditional order granting the petition and directing the Parole Commission to provide a new statement of reasons for its decision or conduct a de novo hearing on Furnari's parole application. Id. at 258.

In response to the District Court's order implementing our mandate, the Parole Commission conducted a de novo hearing in December 2000 and upheld Furnari's Category Eight rating as well as its decision to postpone a rehearing for more than 148 months. Furnari appealed to the Board which on April 24, 2001, affirmed the order of the Parole Commission, stating

that the Parole Commission had chosen to rely on Casso's information in part because information from other witnesses corroborated it.

### (b) 2002:  The Second Habeas Corpus Petition

In April 2002, Furnari filed a second habeas corpus petition in the District Court advancing four points:  (1) the Parole Commission following the December 2000 hearing failed to provide adequate reasons for crediting Casso's information; (2) the Parole Commission violated the Ex Post Facto Clause of the Constitution by applying an inapplicable version of the Guidelines for Decisionmaking, 28 C.F.R. § 2.20, adopted after he committed his offenses; (3) the evidence did not support the Parole Commission's decision; and (4) the Parole Commission's reliance on conduct other than that of the offenses of the conviction violated its own rules as well as due process of law.

On July 18, 2002, the District Court granted the petition on the ex post facto contention and ordered the Parole Commission to reevaluate Furnari's appeal in accordance with the version of 28 C.F.R. § 2.20 in effect at the time that Furnari committed the offenses for which he had been convicted.  But the court denied Furnari's petition in all other respects, finding that the Parole Commission had a rational basis to support its conclusions and properly had considered Furnari's conduct outside of the scope of his conviction in deciding his offense severity rating.  Furnari did not appeal to this Court from that decision.

In response to the District Court's July 18, 2002 order, the Parole Commission issued a Notice of Action on August 13, 2002, stating that it had reevaluated Furnari's case considering

the correct version of 28 C.F.R. § 2.20 but had decided not to change its prior decision. The Board affirmed the Parole Commission's order on November 14, 2002.

(c) 2003-2004: The Third Habeas Petition

On November 13, 2003, Furnari filed a third petition for habeas corpus in the District Court claiming that the Parole Commission's August 13, 2002 decision violated due process of law inasmuch as the Parole Commission in making its decision relied on conduct not related to his offenses and the decision lacked a rational basis because the Parole Commission in reaching its result relied on Casso's information. In March 2004 the District Court denied the petition, noting that it had addressed and rejected the same arguments in its order of July 18, 2002, partially denying the habeas corpus application that Furnari then was advancing. App. at 186. The court also held that there was a rational basis for the Parole Commission's decision. Id.

Furnari appealed to this Court but we affirmed the District Court's order because we concluded that the Parole Commission could consider Furnari's conduct unrelated to the offenses for which he had been convicted in determining his offense severity rating. Moreover, we determined that the Parole Commission had a rational basis for awarding Furnari a Category Eight rating. Furnari v. United States Parole Comm'n, 125 Fed. App'x 435, 437 (3d Cir. 2005).

(d) 2005: Statutory Interim Parole Hearing and the Current Habeas Petition

On June 8, 2005, Furnari received another statutory interim hearing pursuant to 18 U.S.C. § 4208(h) and 28 C.F.R.

8

§ 2.14.  At the time of the hearing the Parole Commission was scheduled to expire on October 31, 2005.  During the hearing Furnari argued that information from Alphonse D'Arco in the form of trial testimony corroborating Casso's information factually was impossible and the Parole Commission should not consider the testimony in reaching its decision.  The Parole Commission denied Furnari parole on July 8, 2005, and adhered to the 2011 rehearing date.  On September 29, 2005, Congress extended the life of the Parole Commission for an additional three years to October 31, 2008, its current expiration date.

Furnari appealed from the Parole Commission's July 8, 2005 order to the Board making the following claims:  (1) the Commission exceeded its authority when it scheduled a rehearing in 2011; (2) his Category Eight severity rating was unjust because it was based on information from unreliable witnesses and factually was incorrect; (3) there was significant information that D'Arco was not credible; (4) the Parole Commission did not properly consider additional information regarding the credibility of the informants in the interim hearing; (5) his 100-year sentence was grossly disproportionate to his crimes and the Parole Commission should have considered this circumstance to be a mitigating factor when determining his parole eligibility; and (6) the Parole Commission should have been more lenient to him on the grounds of compassion, considering his age[2] and excellent behavior rating.  On November 23, 2005, the Board rejected all of Furnari's arguments and thus upheld the Parole's Commission's order.

On February 14, 2006, Furnari filed the habeas corpus

---

[2]According to his brief filed October 17, 2007, Furnari was 83 years old at that time.

petition, an appeal from the denial of which now is before us, pursuant to 28 U.S.C. § 2241 in the District Court challenging the Parole Commission's July 8, 2005 decision and the Board's November 23, 2005 decision affirming the July 8, 2005 decision. He raised the following four claims in the District Court: (1) the Parole Commission violated 18 U.S.C. § 4206(c), section 235(b)(3) of the Sentencing Reform Act, and its own regulations, by scheduling a rehearing date past the date of its statutory expiration; (2) the Parole Commission's Category Eight severity rating lacked a rational basis; (3) the Board violated due process of law by failing to consider what Furnari considers to be exculpatory evidence; and (4) the Parole Commission should have considered his 100-year sentence to be grossly disproportionate and thus should have treated its length as a mitigating circumstance in its decision.

By order entered on June 20, 2007, the District Court denied Furnari's petition. Furnari then filed a timely notice of appeal of the District Court's June 20, 2007 order to this Court. We now adjudicate that appeal.

## III. JURISDICTION AND STANDARDS OF REVIEW

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 2241(a). We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

On appeal in this habeas corpus proceeding, we exercise plenary review of the District Court's legal conclusions. See Wilson v. United States Parole Comm'n, 193 F.3d 195, 197 (3d Cir. 1999). Our role in reviewing decisions of a district court in a proceeding arising from a Parole Commission and Board

disposition on a petition for a writ of habeas corpus is more limited insofar as the review includes a review of the Parole Commission's and Board's action.    We review the administrative findings of fact to determine "whether there is a rational basis in the record for the [Parole Commission's] conclusions embodied in its statement of reasons."  Gambino v. Morris, 134 F.3d 156, 160 (3d Cir. 1998) (quoting Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir. 1976)); see also 28 C.F.R. § 2.18 ("The granting of parole to an eligible prisoner rests in the discretion of the U.S. Parole Commission.").

## IV.  DISCUSSION

A.  Was the District Court correct in holding that the Parole Commission did not violate the Sentencing Reform Act, 18 U.S.C. § 235(b)(3), when it scheduled a rehearing date past the statutory expiration date for the Commission?

Furnari claims that the Parole Commission violated section 235(b)(3) of the Sentencing Reform Act, referred to as a "winding down" provision, which at the time of Furnari's sentencing provided:

The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction a day before the expiration of five years after the effective date of this Act, that is within the range that applies to the prisoner under the applicable guideline. A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the

11

> release date, in accordance with Parole
> Commission procedures, before the expiration of
> five years following the effective date of this Act.

Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 235(b)(3), 98 Stat. 2032 (1984) (prior to 1987 amendment). Even though Congress has repealed section 235(b)(3) the parties briefed this case on the basis of their understanding, with which we agree, that it continues to control this pre-Sentencing Guidelines case, though they disagree about the section's effect. When Congress enacted section 235(b)(3) the Parole Commission was scheduled to expire five years after the effective date of the Sentencing Reform Act and thus it is clear that Congress contemplated that the Parole Commission should not expire without setting release dates for prisoners within its jurisdiction. Though the phrase "early enough to permit consideration of an appeal of the release date" obviously is not precise, it is applied to require that between three to six months before the date of its expiration, a date that has been extended several times, the Parole Commission must set a release date which, of course, could be scheduled for long in the future. See 28 C.F.R. § 2.64(b) (1996) ("The release dates required by section 235(b)(3) need not be set any earlier than the time required to allow an administrative appeal within the ten-year period, i.e., three to six months before the end of that period."); Lightsey v. Kastner, 846 F.2d 329, 332 (5th Cir. 1988).

Currently the Parole Board is scheduled to expire on October 31, 2008. See United States Parole Commission Extension Authority Act of 2005, P.L. No. 109-76, 199 Stat. 2035, § 2 (Sept. 29, 2005). Accordingly, inasmuch as section 235(b)(3) still requires that the Parole Commission before its

12

expiration set dates for release early enough for appeals for prisoners still within its jurisdiction one day before its expiration, as of now no later than three to six months prior to October 31, 2008, it should set release dates for prisoners who will be within its jurisdiction one day before that date.  See United States ex rel. D'Agostino v. Keohane,  877 F.2d 1167, 1172 (3d Cir. 1989).  Nevertheless the Parole Commission does not have to act before the expiration of the three- to six-month period, and if it does choose to act before or during the three- to six-month period it is free later to set release dates beyond October 31, 2008.  See id.

Here, on July 8, 2005, the Parole Commission denied Furnari parole and adhered to the rehearing date it had set for 2011 and thus it cannot be said that it set a release date in the three- to six-month period before October 31, 2005, when, prior to its latest extension, it was scheduled to expire.  Though the Parole Commission's failure to set a release date might have been problematical, Congress eliminated, or at least postponed, the problem when on September 29, 2005, it extended the life of the Parole Commission to October 31, 2008, when it now will expire unless, as the Government contemplates will happen, Congress extends its life.

In its order of June 20, 2007, now on appeal before us in these habeas corpus proceedings challenging the Parole Commission's July 8, 2005 decision and the Board's decision of November 23, 2005, affirming the Parole Commission's decision, the District Court rejected Furnari's claim that the Parole Commission was in violation of section 235(b)(3), by reason of having failed to set a release date, as the court noted that "[the statute] will require the Parole Commission, prior to

13

its expiration, to set a definite release date . . . but that statute does not require that the Parole Commission set such a date now." App. at 35. The District Court was correct because the Parole Commission took its July 8, 2005 action setting the rehearing date but not a release date before the end of three- to six-month period prior to the expiration of the Commission then scheduled for October 31, 2005, and before the now extended date of October 31, 2008. Thus, we see no basis to reverse the order of the District Court of June 20, 1997, on the theory that the Parole Commission did not timely perform its duties and accordingly to the extent that Furnari challenges the timeliness of the Parole Commission's decision we will affirm the June 20, 2007 order.

In affirming we are doing so without precluding Furnari from filing a new habeas corpus action at the end of the three- to six-month period prior to October 31, 2008, if the Parole Commission by that time has not set a release date for him.[3] In

---

[3]The Government contends that the Parole Commission lawfully may comply with section 235(b)(3) by denying parole. But inasmuch as the Parole Commission has not merely denied Furnari parole but, instead, has set a hearing date for 2011, we see no need to consider whether we agree with the Government. On the other hand, we do not see how the Parole Commission can comply with section 235(b)(3), which requires it to set a "release date" early enough to permit the prisoner to appeal from that release date to the Board before the Parole Commission expires, simply by setting a hearing date for some future date during the three-to six-month period before its expiration.

14

this regard we reiterate that the Parole Commission currently is scheduled to expire on October 31, 2008, and, though the Government believes that Congress will extend its life, we make our determination on the basis of what the law now is rather than what it may become. Of course, we express no opinion on what disposition the District Court should make in a new habeas corpus action if Furnari brings it, particularly inasmuch as Congress may extend the life of the Parole Commission again even after the three- to six-month period expires or might transfer its functions to another authority.

> B. Does Furnari's repeated litigation of the Parole Commission's denial of parole based on his offense severity rating constitute an abuse of writ?[4]

Furnari also claimed in his petition in the District Court that the Parole Commission erroneously considered unreliable

---

[4]We think that it is appropriate that we consider Furnari's remaining points inasmuch as the time when he may raise the points in a new petition for habeas corpus may be only a few weeks in the future. Functionally, therefore, insofar as this case implicates the Parole Commission's failure to act we are in a situation very little different from that in which we remand a case for a new trial and in our disposition consider issues likely to be raised again on remand though we need not do so. See, e.g., Diehl v. Blaw-Knox, 360 F.3d 426, 433 n.5 (3d Cir. 2004). Moreover, Furnari's arguments, if accepted, may provide a basis for habeas corpus relief that is independent of his argument that the Parole Commission should have set a release date by now.

testimony when it determined that his offense severity rating was Category Eight. The Government answers that by asserting this claim Furnari is abusing the writ of habeas corpus.

Furnari has raised the claim of an erroneous offense severity rating in all four of his habeas corpus petitions. The District Court denied his first petition in April 1999 but we vacated that order after we took notice of the Board's failure to specify the pertinent case factors on which it relied in reaching its decision. Furnari, 218 F.3d at 256.[5] The District Court rejected the erroneous offense severity claim in Furnari's second habeas corpus petition in its July 18, 2002 order, a decision that Furnari did not appeal to this Court. In March 2004 the District Court denied Furnari's third habeas corpus petition seeking relief in part on the basis of an erroneous offense severity rating. In that decision the District Court noted that it had addressed the same issue in its July 18, 2002 order. As we have indicated, we affirmed the District Court's March 2004 order. Furnari, 125 Fed. App'x at 437. When the District Court denied this claim and all other claims in Furnari's fourth habeas petition in its June 20, 2007 order, it stated that he previously had raised the issue and that we had upheld the District Court's rejections of it.

When a prisoner files multiple petitions for habeas corpus relief, the abuse of the writ doctrine as set forth in 28 U.S.C. § 2244(a) may bar his claims:

> No circuit or district judge shall be required to entertain an application for a writ of habeas

---

[5]Of course, the Parole Commission ultimately adhered to the Category Eight rating.

16

corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

The Supreme Court has determined that "nothing in [28 U.S.C.] § 2255 requires that a sentencing court grant a hearing on a successive motion alleging a ground for relief already fully considered on a prior motion and decided against the prisoner." Sanders v. United States, 373 U.S. 1, 9, 83 S.Ct. 1068, 1074 (1963).

The Court in Sanders explained that a court may grant controlling weight to a denial of a prior application for habeas corpus when three criteria are met:   (1) the same ground presented in the successive application was determined adversely to the applicant on the previous application; (2) the previous determination was made on the merits; and (3) "the ends of justice" would not be served by reaching the merits of the subsequent application.  Id. at 11, 83 S.Ct. at 1075.

In a case in which a successive petition includes a claim for relief already fully considered and rejected, if the Government opposes the petition on an abuse of the writ basis it has the burden to plead abuse of the writ and must make the claim with clarity and particularity in its answer to the petition. Id. at 10-11, 83 S.Ct. at 1074-75.  But once the Government has made a claim of abuse of the writ, the burden shifts to the petitioner to show that "the ends of justice" would be served by the court entertaining his petition, a showing that the petitioner

satisfies by supplementing his claim by making a "colorable showing of factual innocence." <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627 (1986).

Here the Government argues that Furnari has abused the writ by again asserting his severity rating claim and it has identified the relevant history of Furnari's petitions to support this contention. Specifically, the Government cites the District Court's July 18, 2002 order issued in response to Furnari's second habeas petition in which the District Court reviewed the Parole Commission's explanation of its credibility assessment of the Government informants and found that the Parole Commission had a rational basis for its acceptance of and reliance on the information received at the parole hearing. Accordingly, the District Court already had considered fully and rejected the severity rating claim on the merits before Furnari presented the same claim in his current application. Thus, we may give controlling weight to the denial of Furnari's prior habeas corpus petition with respect to the severity rating claim so long as giving it that weight would not offend "the ends of justice."

As we stated above, to meet the requirements for an ends of justice claim, Furnari must supplement his claim with a "colorable showing of factual innocence." <u>Kuhlmann</u>, 477 U.S. at 454, 106 S.Ct. at 2627. But instead of claiming that he is innocent of the offenses for which he was convicted as <u>Kuhlmann</u> requires, Furnari claims that he is innocent of uncharged murders and violent conduct that the Parole Commission considered when it made its determination of his offense severity rating. He argues that we can consider this claim when determining whether he has made a colorable

18

showing of factual innocence and points to two Supreme Court cases for support of his argument: <u>Murray v. Carrier</u>, 477 U.S. 478, 106 S.Ct. 2639 (1986), in which the Court indicated that in extraordinary cases, where a constitutional violation probably has resulted in the conviction of an individual who is actually innocent, a district court may grant the writ; and <u>Schlup v. Delo</u>, 513 U.S. 298, 115 S.Ct. 851 (1995), in which the Court stated that in order to establish a probability of innocence a petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of new evidence not presented at the trial.

But these cases are not helpful to Furnari because they address situations in which prisoners may be innocent of the offenses for which they were convicted and imprisoned. Furnari does not supplement his claim with a colorable showing of factual innocence of the offenses for which he was convicted and, in fact, in these proceedings does not challenge his convictions on any basis. Indeed, no one can describe better than Furnari himself the wrong focus of his "colorable showing of factual innocence" claim than he does in his brief in which he explains that he "finds himself in the unique position of having to prove himself innocent of conduct for which he never has been charged in order to contest what appears to be an irrebutable presumption against his parole." Appellant's br. at 41-42.

But even if he could make a showing of actual innocence with respect to uncharged conduct he would not demonstrate that an "ends of justice" circumvention of the abuse of the writ bar would be appropriate because he would not make a colorable showing of actual innocence of the offenses for which

he was convicted. Moreover, even if he could satisfy the "ends of justice" standard by making a showing different from a "colorable showing of factual innocence" of the offenses of conviction, we see nothing in the record to justify a conclusion that Furnari has made that showing by demonstrating that the Parole Commission wrongfully considered the uncharged conduct in calculating his category Eight severity rating. Accordingly, he has not shown that "the ends of justice" would be served by reaching the merits of his severity rating claim.

Furnari also asks that we consider his latest challenge to the truth of the information corroborating Casso's information as new evidence. But neither the information nor the claim is new. We previously have considered and rejected Furnari's contention that there was no rational basis for the Parole Commission's justification for his Category Eight rating. See Furnari, 125 Fed. App'x at 437 (confirming the existence of a rational basis for the Parole Commission's conclusions). Thus, by advancing the litigation on the severity rating issue Furnari is abusing the writ and, accordingly, we will affirm the District Court's denial of habeas relief on this claim.

C.    Did the Parole Commission properly consider exculpatory evidence in its decision to continue to deny Furnari parole?

Furnari claims that the Parole Commission's findings regarding the credibility of the information from various informants are arbitrary, capricious, and without a rational basis. We already have held that the Parole Commission had a rational basis for its factual findings with respect to Furnari's alleged involvement in uncharged murders. Furnari, 125 Fed. App'x at 437. Nevertheless we will consider this contention inasmuch as

20

the Government does not contend that Furnari is abusing the writ by advancing the claim.

Congress has given the Parole Commission great discretion concerning matters of parole. See 18 U.S.C. § 4203. In addition, applicable regulations permit the Parole Commission to use all relevant, available information in making parole determinations. Thus, 28 C.F.R. § 2.19(c) provides that:

> The Commission may take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond. If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability.

18 U.S.C. § 4206(c) permits the Parole Commission to grant or deny release on parole notwithstanding the guidelines of that section so long as it has good cause for doing so and it furnishes the prisoner with written notice stating with particularity the reasons for its determination. "Good cause" requires substantial reasons for the Parole Commission's action and includes only grounds which are "not arbitrary, irrational, unreasonable, irrelevant or capricious." Harris v. Martin, 792 F.2d 52, 55 (3d Cir. 1986). "Good cause" may include

considerations of factors such as whether "the prisoner was involved in an offense with an unusual degree of sophistication or planning or has a lengthy prior record, or was part of a large scale conspiracy or continuing criminal enterprise." Romano v. Baer, 805 F.2d 268, 270 (7th Cir. 1986) (quotation marks and citation omitted). Although the Parole Commission's decisions must have a factual basis, judicial review is limited to whether there is "some evidence" in the record to support its decision. Maddox v. United States Parole Comm'n, 821 F.2d 997, 999 (5th Cir. 1987).

When there is conflicting information available to the Parole Commission, it must resolve disputes about the information by "a preponderance of the evidence." Gambino v. Morris, 134 F.3d at 168. See Campbell v. United States Parole Comm'n, 704 F.2d 106, 114 (3d Cir. 1983). Clearly we cannot overturn the Parole Commission's credibility determination if there is a basis for its decision. See Hackett v. United States Parole Comm'n, 851 F.2d 127, 131 (6th Cir. 1987). Moreover, the Parole Commission is entrusted with the power to determine the weight to be accorded mitigating factors.

Furnari asserts that the Parole Commission improperly discredited an affidavit of George Zappola and an autobiography of Salvatore Gravano that support his position minimizing his role in violent mafia criminal activity while assigning too much credit to adverse information from Thomas Carew in its November 23, 2005 Notice of Action on Appeal. In that notice, the Board explained its decision regarding its assessment of the credibility of conflicting information in the record:

> The Board rejects your claim and finds that the affidavit does not prove that you had nothing to

22

do with the murder of Richard Taglianetti. The Board finds Zappola's affidavit not to be credible because it was submitted so late, five years after you made this argument at your initial hearing in 2000, and because it is not corroborated, whereas the reason for Taglianetti's murder on which the Commission relied was corroborated by several individuals. Further, Zappola affirms in his affidavit that 'Taglianetti was killed only because of what he did to my wife' (Exhibit X), but that assertion is contradicted by evidence in your Exhibits V and W. The Board finds more credible the contradictory evidence contained in the exhibits. First, according to the testimony of an FBI agent set forth in Exhibit V, Taglianetti's argument with his sister-in-law was not the sole or even the most important reason for his murder, but was simply the event that caused the Lucchese Family to more vigorously pursue the still existing contract that you put out on him in 1983 when you were the Lucchese consigliere. [Testimony from FBI Agent Byrne omitted.] Second, as shown in Exhibit W, when Zappola pleaded guilty to Taglianetti's murder, he never mentioned avenging his wife's honor or her being 'slapped around' by Taglianetti as a reason for the murder. He affirmed that the murder was to advance his position in the racketeering enterprise. Zappola testified at the plea hearing that he conspired with others to murder Taglianetti 'for the purpose of maintaining and

increasing my position in an association in fact enterprise, consisting of myself and others, which enterprise engaged in racketeering activity.'

App. at 121. It is clear from the above that the Board considered the evidence concerning Furnari's uncharged conduct and found that the information Furnari claims exculpates him from criminal conduct attributed to him is less credible than that which implicates him in mafia related murders and beatings. Id.

Furnari attempts to analogize his case to Gambino in which we found that the Parole Commission's denial of parole was "arbitrary and capricious" and thus remanded the case for reconsideration. 134 F.2d at 165. But this case is distinguishable from Gambino because we based our conclusions there in part on the fact that the Parole Commission relied on information from unnamed sources, a procedure that deprived the prisoner of the opportunity to rebut the information. Thus, in Gambino the Parole Commission proceedings denied the prisoner due process of law. Id. at 163. Moreover, in Gambino the Parole Commission relied on facts previously found to be erroneous without information to suggest otherwise. Id. at 162. In Furnari's case, however, there is considerable information supplying good cause for the Parole Commission's decision.

Furnari is disappointed by the limited weight and credibility that the Parole Commission and the Board afforded the Zappola affidavit, but it is apparent it had a factual basis for its determination. The reports from the Board are thorough and reasonable. Furthermore, the Parole Commission considered Furnari's information and articulated a rational basis for rejecting its credibility, a determination solely within its

24

discretion.  Accordingly, the District Court properly denied Furnari's exculpatory evidence claim of the habeas petition.

> D.    Did the Parole Commission properly consider sentence proportionality as a mitigating factor in its decision to deny parole?

Furnari claims that the Parole Commission should have taken into account the lack of proportionality of his sentence when on July 8, 2005, it adhered to its prior determination to postpone any parole decision until a rehearing in 2011.[6]  It is unclear, however, whether he is challenging his sentence ab initio as the sentencing court imposed it or is challenging it on the basis of the Parole Commission's allegedly erroneous exercise of its discretion in weighing the length of his sentence as a possible mitigating factor warranting release on parole. Therefore we will consider the sentencing point as if Furnari presented both ways.

If Furnari is challenging his sentence ab initio, he brought his action in the wrong district because a defendant may

---

[6]We note that the abuse of writ doctrine also might apply to this claim.  Under McClesky v. Zant failure to raise a claim that could have been raised in an earlier habeas corpus petition can be grounds for dismissal of a later petition as an abuse of the writ unless the prisoner can meet the burden of showing cause and prejudice with respect to the omission.  499 U.S. 467, 492-93, 111 S.Ct. 1454, 1469-70 (1991).  Here Furnari did not raise his proportionality claim in his previous petitions, but we nevertheless will consider it now because the Government did not plead abuse of the writ as an answer to this claim.

25

collaterally attack his conviction and sentence only in a proceeding before the sentencing court pursuant to 28 U.S.C. § 2255.  See United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593 (1982); United States v. Addonizio, 442 U.S. 178, 179, 99 S.Ct. 2235, 2237 (1979); see also Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994).  In this regard 28 U.S.C. § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Accordingly, if Furnari wished to attack his sentence ab initio, he was required to do so in a section 2255 petition in the Southern District of New York where he was convicted as neither the Parole Commission nor the District Court in the Middle District of Pennsylvania could address a challenge to his sentence as imposed on the basis that it was disproportionate as compared to that of other defendants.  Moreover, Furnari did challenge the proportionality of his sentence on direct appeal but the United States Court of Appeals for the Second Circuit found Furnari's sentence to be proportional.  Salerno, 868 F.2d at 543.[7]

---

[7]Furthermore, according to Furnari's brief, he has filed a motion in the Southern District of New York seeking "to vacate the judgment imposing the 100 year sentence on the grounds that the sentence was based on false information."  Appellant's br. at 5.  We do not know if the court has ruled on that motion.

If, on the other hand, Furnari is challenging the Parole Commission's refusal to find the length of his sentence a mitigating factor warranting a grant of parole, in a jurisdictional sense he brought his claim correctly as he is confined in the Middle District of Pennsylvania and we may consider it on the merits inasmuch as 28 U.S.C. § 2241 allows habeas corpus petitions to be brought attacking the Parole Commission's exercise of discretion in making parole decisions in the district in which the petitioner is confined. See United States v. Eakman, 378 F.3d 294, 297 (3d Cir. 2004); Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001); United States v. Kennedy, 851 F.2d 689, 690-91 (3d Cir. 1988).

Parole determination criteria focus on the nature and circumstances of the offense and the history and characteristics of the offender as well as the consequences of releasing the prisoner back into the public:

> If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines: (1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and (2) that release would not jeopardize the public welfare; subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.

18 U.S.C. § 4206(a)(1)-(2). Section 4206(a) does not, however, mention the length of the sentence as imposed as a factor for the Parole Commission to consider in granting parole and thus Congress did not intend it to be a body with authority to review an initial sentencing determination of a sentencing court.

On the other hand, the Parole Commission has the complete authority to assign the weight to any mitigating factors in determining whether to grant parole. See Campbell, 704 F.2d at 113. We have held that "the statute instructs the Commission to use its own judgment in factoring sentencing length because sentencing and parole are separate, although related, processes." Geraghty v. United States Parole Comm'n, 719 F.2d 1199, 1208 (3d Cir. 1983). Accordingly, when considering mitigating factors in its determination of when to set a release date or rehearing date, the Parole Commission can consider the length of a prisoner's sentence as compared to those of similarly situated prisoners. Id. But in Farkas v. United States, 744 F.2d 37, 40 (6th Cir. 1984), the court held that the Parole Commission had no obligation to consider the petitioner's sentence length in making its parole decision.

In addressing the proportionality issue, the Board stated:

You compare your sentence to sentences imposed on other defendants in other cases, but not to your own co-defendants. The Board refers you to the Second Circuit's decision, United States v. Salerno, 868 F.2d 524, 542-543 (2d Cir. 1989), where the court affirmed your 100-year sentence and the 100-year sentences imposed on all but one of your co-defendants. The Second Circuit found that your 100-year sentence was constitutional

> and it rejected your argument that your sentence was disproportionate to your crime, pointing out that you were a consigliere of the Luchese Family and 'had been involved in many of the recorded meetings where intimate knowledge of the Commission's violent business was evident.' 868 F.2d at 543.    The Board agrees with the Commission's conclusion on page 4 of the hearing summary that your sentence was not disproportionate to your crime and it declines to change the Commission's decision for you.

App. at 122.   Though they were not subject to a statutory obligation to do so, the Parole Commission and the Board considered the length of Furnari's sentence and found that it was not an appropriate mitigating circumstance warranting the grant of parole.   We cannot possibly reject their conclusions in this respect because the mafia, an organization of which Furnari was a part and in whose activities he participated, as the record in this case demonstrates, intolerably set itself up as a sort of shadow government, complete with an established structure, exercising taxing, regulatory, and adjudicative authority over its members and victims.   Indeed, even Furnari's brief, which quite naturally attempts to minimize his mafia activities, paints what to us is a disturbing picture of the conduct for which he was convicted.   There can be no doubt but that the Government must suppress the mafia and clearly the imposition of substantial criminal sentences on persons engaging in mafia criminal activity is one way to do so.   Inasmuch as the Parole Commission has full discretion to determine the weight of mitigating factors in considering whether to grant parole, the District Court correctly held that the Parole Commission

properly considered the length of Furnari's sentence when making its parole determination.

## V. CONCLUSION

In view of the aforesaid, we will affirm the District Court's June 20, 2007 order.